IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS P. NIXON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-296 |
| | § | |
| CITY OF HOUSTON and HAROLD HURTT, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court are Plaintiff's Application for Preliminary Injunction (Document No. 2) and Plaintiff's Motion for Extension of Temporary Restraining Order (Document No. 16). Having considered the motions, submissions, applicable law, and oral argument of the parties at a hearing on February 21 and 22, 2006, the Court determines the motions should be denied

## BACKGROUND

Plaintiff Thomas Nixon ("Nixon") is a law enforcement officer with the Houston Police Department ("HPD"). On January 18, 2006, after a high speed chase involving a fleeing suspect ended in a collision, Plaintiff, who arrived at the scene after the collision, made statements to the media critical of HPD's policies regarding high speed chases. Plaintiff made a number of statements to the media indicating his frustration

with HPD's pursuit policy and stated that he was "embarrassed to be a police officer."[1] Although Defendants became aware of Nixon's statements on January 18, they took no action against him on that day. The next day, on January 19, 2006, Plaintiff again appeared on news media outlets and again criticized HPD's policies. During the January 19 broadcasts, Nixon admitted that he had previously violated HPD's pursuit policy and that he was glad he had violated the policy.

After the January 19, 2006 interviews, HPD relieved Plaintiff of his regular duties and placed him on relieved of duty-administrative status pending an investigation into his conduct on January 18 and 19.[2] Defendants assert they initiated the investigation to determine whether Nixon's statements violate HPD policy and undermine the efficient operations of HPD.[3] Plaintiff received a written order from HPD instructing him not to speak with the media regarding department policy or ongoing investigations in his capacity as a HPD officer. The order further directed him,

---

[1] Defendants note that Nixon's statements at the scene gave the erroneous impression that Nixon had been involved in the chase. Moreover, Defendants complain that a television viewer could have mistakenly believed Nixon to be an HPD spokesperson.

[2] Nixon continues to receive full compensation and benefits.

[3] Defendants suspended Nixon for 15 days because the content of certain magazine articles written by Nixon. That suspension is not the subject of this lawsuit. Nevertheless, Defendants assert the suspension should be considered in viewing the entirety of the circumstances surrounding HPD's placement of Nixon on administrative leave. The Court recognizes the impact of the suspension, but will not place great weight upon the suspension for unrelated conduct in determining the appropriateness of the preliminary injunction.

in his capacity as a private citizen, to refrain from making statements that tend to "bring reproach, discredit, or embarrassment to the department."

On January 27, 2005, Plaintiff filed the instant action asserting claims against the city of Houston and HPD Police Chief Harold Hurtt ("Hurtt") alleging violations of his First and Fourteenth Amendment rights. On February 3, 2006, the Court partially granted Nixon's application for a temporary restraining order and directed HPD to suspend any orders prohibiting Nixon, in his official capacity, from engaging in speech on matters relating to HPD policy. The Court further ordered HPD to suspend any orders prohibiting Nixon from making statements in his capacity as a private citizen. The Court declined to reinstate Nixon to his patrol position.

On February 15, 2006, HPD rescinded its January 19 order, which provides the basis for Nixon's complaint, and replaced it with a "clarifying order." In the clarifying order, HPD directs Nixon to abide by existing HPD policies. The order, by its terms, indicates it will not become effective during the pendency of any contrary order of this Court. On February 21, 2006, the Court held a full preliminary injunction hearing in the captioned matter. At the hearing, Defendants made a judicial admission that the clarifying order was not intended to restrict Nixon's private speech, and, as such, Nixon's private speech is no longer at issue in this case.

## LAW AND ANALYSIS

In his application for a preliminary injunction, Plaintiff asks the Court to: enjoin Defendants from engaging in unlawful employment practices; order Defendants to rescind orders prohibiting Plaintiff from making statements on matters of public concern; and reinstate Plaintiff to the patrol position he held before being reassigned. To obtain a preliminary injunction, Nixon must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat he will suffer irreparable injury absent the injunction; (3) that the threatened injury outweighs any harm the injunction might cause Defendants; and (4) the injunction will not impair the public interest. *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000).

Plaintiff argues he is entitled to injunctive relief because of both HPD's regulations placed on all HPD officers' speech and his reassignment to relieved of duty-administrative status based on his January 18 and 19 statements. The Court must analyze HPD's restrictions on Nixon's speech under *Pickering v. Board of Education,* 391 U.S. 563 (1968), *Connick v. Myers,* 461 U.S. 138 (1983), and progeny.[4] *Moore*

---

[4] The Court notes it is unclear the exact theory under which Nixon seeks injunctive relief. Nixon asserts claims for First Amendment retaliation, a First Amendment claim under 42 U.S.C. § 1983, and also includes a First Amendment claim for "violation of protected right to free speech." The Court need not make a distinction between the grounds under which Nixon seeks injunctive relief because the *Pickering/Connick* analysis is central to all Nixon's potential First Amendment claims. *See, e.g., Finch v. Fort Bend Indep. Sch. Dist.,* 333 F.3d 555, 564 (5th Cir. 2003)(elements of a retaliation claim); *Moore v. City of*

*v. City of Kilgore,* 877 F.2d 364, 369 (5th Cir. 1989); *see also Farhat v. Jopke,* 370 F.3d 580, 598 (6th Cir. 2004)(*Pickering* balancing test applies to prior restraints on public speech).

First, the Court must determine if Nixon's speech can be "fairly characterized as constituting speech on a matter of public concern." *Connick,* 461 U.S. at 146. In making such a determination, the Court examines the content, form, and context of the statements. *Id.* at 148. This determination is a question of law. *Moore,* 877 F.2d at 369. As the Supreme Court has noted, "public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *City of San Diego v. Roe,* 543 U.S. 77, 83-84 (2004)

If the Court concludes that the speech constitutes a matter of public concern, the Court next determines if Nixon and the public's interest is outweighed by the Defendants' interest "in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568. Defendants bear the burden of showing their interest. *See Moore,* 877 F.2d at 372. Thus, to restrict such speech, Defendants must demonstrate their interest outweighs that of Nixon and the public at large. *Id.* at 376. The Fifth Circuit examines a number of factors when balancing, including:

---

*Kilgore,* 877 F.2d 364, 369-70 (5th Cir.1989) (§ 1983 analysis).

>   (1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (5) whether the activity impairs discipline by superiors or harmony among coworkers.

*Brady v. Fort Bend County,* 145 F.3d 691, 707 (5th Cir. 1998). However, this list is nonexclusive and the factors considered depends upon the given situation. *Id.* at n. 6.

<u>Relieved of Duty-Administrative Status</u>

HPD placed Nixon on relieved of duty-administrative status on January 19, 2006 because of media statements Nixon made after the high speed pursuit. Nixon made statements critical of HPD's chase policy at the scene of the incident and the next day on various media outlets. The Court concludes, for the purposes of its analysis, that Nixon's statements regarding HPD's pursuit policy constitute a matter of public concern. *See Moore,* 877 F.2d at 371-72 (finding firefighter's media statements, made after the death of a firefighter, criticizing the city for under-staffing qualified as a matter of public concern).

The Court must next determine if HPD's interest "in promoting the efficiency of the public services it performs through its employees" outweighs Nixon's interest. *Pickering,* 391 U.S. at 568. Defendants point to the fact that Nixon's unauthorized

statements to the media at the scene of the accident gave the erroneous appearance that Nixon was involved in the chase and speaking from firsthand knowledge and/or was an HPD spokesperson. They aver Nixon's statements that he was embarrassed to be a police officer had the potential to negatively impact employee morale. Defendants express serious concerns over statements wherein Nixon volunteered he had previously violated HPD's pursuit policy and he was glad he had violated the policy. According to Defendants, these statements caused serious concern not only because they amounted to public flaunting of Nixon's disregard for department policy, but also because they made HPD question whether or not Nixon would follow future lawful orders.[5]

Courts have routinely recognized that law enforcement agencies must take measures to ensure discipline within their ranks. As the United States Court of Appeals for the Seventh Circuit noted "there is a particularly urgent need for close teamwork among those involved in the 'high stakes' field of law enforcement. Speech that might not interfere with work in an environment less dependent on order, discipline, and esprit de corps could be debilitating to a police force. Such considerations are permissible in weighing constitutional violations." *Breuer v. Hart,* 909 F.2d 1035,

---

[5]Defendants assert Nixon's statements ostensibly violated HPD policies. The purpose of the HPD's internal investigation is to make such determination.

1041 (7th Cir. 1990). In addition, the United States Court of Appeals for the Eighth Circuit has stated "[b]ecause police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer." *Tindle v. Caudell,* 56 F.3d 966, 971 (8th Cir. 1995). Here, Nixon's public statements regarding his previous violations of HPD policy can reasonably be characterized as insubordination. Moreover, Nixon's superiors were concerned whether Nixon's behavior would undermine the discipline and esprit de corps required to effectively serve the public. Accordingly, for the purposes of this Order, the Court determines that Defendants have established their interest outweighs Nixon's interest and the public's interest in Nixon's speech.[6] This determination is fatal to Nixon's claims for injunctive relief because it necessarily requires the Court to find Nixon has failed to establish a substantial likelihood of success on the merits of his claims. *See Enrique Bernat*, 210 F.3d at 442 (requirements for a preliminary injunction).[7]

---

[6] Such determination is based only on the evidence presented at the preliminary injunction hearing and may not preclude Nixon's recovery at a full trial on the merits.

[7] As the Court has concluded Nixon cannot establish a substantial likelihood of success on the merits, the Court need not address Defendants' argument that Nixon cannot show irreparable harm.

Unconstitutionality of HPD Policies

Nixon also asks the Court to excuse him from complying with the February 15 order because he alleges it has a potentially chilling effect on protected speech. At the preliminary injunction hearing, despite his recognition that the January 19, 2005 HPD order is no longer viable, and despite the fact that Nixon's original complaint never expressly challenges HPD policies, Plaintiff asserted that the February 15 HPD order, which requires him to follow HPD policies and rules, is unconstitutionally vague and overbroad.[8] Nixon does not direct the court to provisions of these guidelines that he avers are unconstitutional. The Court will nevertheless address this argument.

At the hearing, Nixon argued that HPD policies and rules provide no guidance and leave too much discretion to the HPD in determining violations. According to Defendants, these policies are designed to keep order and promote the efficiency of HPD. However, the Court notes that Courts have upheld employment policies that

---

[8] The February 15 order essentially dictates that Nixon is required to comply with Rule 4.18, General Orders 200-08 and 800-2, and Circular No. 05-0405-097. Rule 4.18 provides "Officers shall neither publicly nor at internal official meetings criticize or ridicule the department or its policies . . . where such speech . . . is defamatory, obscene, unlawful, undermines the effectiveness of the department, interferes with the maintenance of discipline, or is made with reckless disregard for truth or falsity." General Order 800-2 provides guidelines for media relations. Circular No. 05-0405-097 entitled "Public Statements" indicates that not all statements are protected and may be in violation of HPD policy and directs the reader to Rule 4.18 and General Orders 200-01, 200-08 and 800-02.

provide less guidance than those Nixon challenges. [9] *See, e.g., Arnett v. Kennedy,* 416 U.S. 134, 162 (1974)(holding that language allowing adverse employment action for "such cause as will promote the efficiency of the service" excluded constitutionally protected speech and was therefore not overbroad); *Magri v. Garusso,* 379 F. Supp. 353, 358 (E.D. La. 1975)(rejecting argument that a regulation that prohibited public criticism of the department that tended "to impair the operation of the department by interfering with its efficiency; interfering with the ability of supervisors to maintain discipline; or having been made with reckless disregard for truth or falsity" was overbroad or vague). Moreover, law enforcement agencies are entitled to place certain restrictions on officers to promote order and discipline. *See Tindle,* 56 F.3d at 971; *Breuer,* 909 F.2d at 1041. The Court concludes that, based on the current complaint and the language of the policies he ostensibly seeks to challenge, Nixon has not shown that the policies are unconstitutional. *See Arnett,* 416 U.S. at 162; *Magri,* 379 F. Supp at 358. Given the foregoing, the Court hereby

ORDERS that Plaintiff's Application for Preliminary Injunction (Document No. 2) and Plaintiff's Motion for Extension of Temporary Restraining Order (Document No. 16) are DENIED.

---

[9]However, this does not preclude a later determination that certain policies are unconstitutional.

SIGNED at Houston, Texas, on this 3rd day of March, 2006.

_____

DAVID HITTNER

United States District Judge